# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| EDISON GLOBAL CIRCUITS, LLC, | § | |
| | § | |
| Plaintiff/Counter Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1207 |
| | § | |
| INGENIUM TECHNOLOGIES CORPORATION, | § | |
| | § | |
| | § | |
| Defendant/Counter Claimant. | § | |

## MEMORANDUM AND ORDER

Docket call in this breach-of-contract lawsuit is scheduled for August 24, 2012. On May 22, 2012, this court allowed the defendant, Ingenium Technologies Corporation, to file an amended answer to assert an affirmative defense to the attorneys' fees sought by the plaintiff, Edison Global Circuits, LLC. (Docket Entry No. 21). Three days later, Edison moved for summary judgment. (Docket Entry No. 23). This court denied the motion in large part on July 11. (*See* Docket Entry No. 26). On July 17, Ingenium moved for leave to file a second amended answer to assert the affirmative defenses of modification, waiver, and estoppel. (Docket Entry No. 28). According to Ingenium, it did not appreciate the need to plead these affirmative defenses until Edison clarified the legal theories underpinning its breach-of-contract claim in its motion for summary judgment and reply brief. (Docket Entry No. 37, ¶ 1; *see also* Docket Entry No. 28, ¶¶ 1, 8). Ingenium explains that it did not previously plead these defenses because it did not want to "burden the Court in this case with unnecessarily pled defenses by pleading the proverbial kitchen." (Docket Entry No. 28, ¶ 8).

Edison opposes the motion. (Docket Entry No. 34). In relevant part, Edison argues that the motion is untimely, that Ingenium knew the factual bases for the proposed defenses in 2010, and that

granting the motion would require additional discovery and an opportunity for dispositive motions. (*See id.* at 1). Ingenium has replied. (Docket Entry No. 37). Ingenium's principal argument is that good cause for the amendment exists because, although it knew the factual bases for the proposed affirmative defenses much earlier, it did not understand the need to plead the defenses until reading Edison's motion for summary judgment and supporting brief filed on May 25, 2012. (*Id.*, ¶¶ 5–6).

Based on the motion, response, and reply; the record; and the applicable law, this court denies Ingenium's motion for leave to file the proposed second amended answer. Docket call will continue as scheduled on August 24, 2012 at 3:30 p.m. in Courtroom 11-B. The reasons for this ruling are explained below.

I.    **The Applicable Law**

"Under FED. R. CIV. P. 16(b)(4), a party seeking to amend its pleadings after a deadline has passed must demonstrate good cause for the delay and extension. The four factors relevant to good cause are: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice." *E.E.O.C. v. Service Temps Inc.*, 679 F.3d 323, 333–34 (5th Cir. 2012) (internal quotation marks omitted).

If a court finds good cause under Rule 16, the court then analyzes whether the proposed amendment should be permitted under Federal Rule of Civil Procedure 15(a). *See Cole v. Sandel Med. Indus., L.L.C.*, 413 F. App'x 683, 688 (5th Cir. 2011) (per curiam) ("It is only after a showing of good cause that proposed amendments are evaluated under the more liberal Rule 15 standard." (citing *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008))). That rule states that a district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P.

15(a)(2). "[T]he language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotation marks omitted). Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).

## II.     Analysis

The threshold question is whether, under the Rule 16(b)(4) factors, Ingenium has demonstrated good cause for filing its untimely motion for leave to file its proposed second amended answer. As Ingenium concedes in its reply, (Docket Entry No. 37, at 1 n.1), its motion is untimely because the April 27, 2012 deadline for discovery and the May 25, 2012 deadline for pretrial motions have long since expired, (Docket Entry No. 13). Ingenium filed its motion for leave to amend on July 17, approximately three weeks before the parties' joint pretrial order was due and five weeks before docket call.

The Rule 16(b)(4) factors weigh against the proposed amendment. Ingenium's explanation for its failure to plead the affirmative defenses in its initial answer is that it did not wish to file "the proverbial kitchen": an overly detailed, catch-all answer, with affirmative defenses that might later prove inapplicable. Ingenium acknowledges that it knew all of the facts giving rise to the defenses of modification, waiver, and estoppel much earlier. (Docket Entry No. 37, ¶ 6). The events giving rise to this case occurred in 2010, the complaint was filed in April 2011, and the parties conducted both written and deposition discovery. Yet Ingenium argues that it was not until Edison moved for summary judgment that Ingenium was able "to ascertain Edison's exact legal positions and the exact

3

legal issues in this case." (*Id.*). Ingenium argues that it "ha[d] not raised this issue in its previous answers because Ingenium only recently learned of Edison's very specific claims within the context of the breach of contract claim via Edison's Motion for Summary Judgment." (Docket Entry No. 28, ¶ 8).

Ingenium's argument is inadequate to show good cause. First, it is not supported by the record. Edison filed its motion for summary judgment on May 25, 2012. Ingenium argued the facts and the legal inferences it asked the court to draw from those facts in its response to the motion. But Ingenium did not "immediately request[] leave to amend" at that point. (Docket Entry No. 37, ¶ 6). Instead, Ingenium waited nearly two months—until after this court ruled on the summary-judgment motion, after the pretrial-motions deadline had expired, and docket call was a little over a month away—to file its motion for leave to amend. Ingenium argues that it was "Edison's recent Reply in Support of Its Motion for Summary Judgment . . . [that] acknowledged and recognized that Ingenium has an affirmative defense based on waiver. Furthermore, the Court's Memorandum and Order on Edison's Motion . . . indicated that Ingenium may be entitled to the affirmative defenses of estoppel and modification." (Docket Entry No. 28, ¶ 6). The fact that both Edison and the court acknowledged the potential application of these defenses does not explain why Ingenium could not and did not plead them earlier.

Ingenium's argument that, even with due diligence, it could not appreciate the need to plead these affirmative defenses until Edison filed its summary-judgment motion, is unpersuasive. The complaint was filed on April 4, 2011 and not amended since. It states a clear theory of how Ingenium breached the contract. Edison alleged that the contract obligated Ingenium to review both older and newer circuit-breaker designs and create a design for Edison that included some newer-

4

design aspects but was based off of an older design. Edison alleged that Ingenium instead based its design primarily on newer models. (*See* Docket Entry No. 1, ¶¶ 7–14). Ingenium knew early in the case that its defenses would arise in significant part from facts supporting the argument that Edison representatives were informed of the basis for Ingenium's circuit-breaker design during the design process, agreed with it, and accepted it. The proposed affirmative defenses Ingenium seeks leave to add—modification, waiver, and estoppel—all arise from these facts. The legal issues the affirmative defenses raise—whether Edison's alleged conduct in overseeing and ratifying Ingenium's circuit-breaker design excused any breach of paragraphs 4(a) and 5's requirement that the design be based off of an older circuit-breaker model—are neither complex nor obscure.

Ingenium's argument also is inconsistent with the discovery requests and responses. In November 2011, Ingenium responded to Edison's interrogatories. One interrogatory asked: "If you contend that Edison Global knowingly approved your design of a circuit breaker that was not based (sic) any of the Older Model Circuit Breakers, describe in detail all legal and factual bases for such contention." Ingenium provided a nearly one-page, single-spaced answer. (Docket Entry No. 23, Ex. C–7, ¶ 9). The interrogatory in effect asked about the affirmative defenses. Ingenium's response provided the factual bases for the defenses it now seeks to add to its answer.

Ingenium's argument also is internally inconsistent. In responding to Edison's argument as to how it would be prejudiced by the late amendment, Ingenium argues that Edison will not be prejudiced because "Ingenium has not asserted any new facts." (Docket Entry No. 37, ¶ 8). Ingenium's argument acknowledges that many of the relevant facts have been present in the case for some time. The parties' discovery, beyond the interrogatory and answer discussed above, includes the deposition of Michael Schneider, (Docket Entry No. 23, Ex. C, at 15–18, 35–42, 75–81,

5

102–05), and e-mails exchanged between Edison and Ingenium representatives during the contract-performance period, (*e.g.*, Docket Entry No. 23, Exs. H, K). The parties' expert reports describe the collaboration between Edison and Ingenium representatives during the circuit-breaker design work. (*See* Docket Entry No. 23, Ex. E, at 6–7; Docket Entry No. 24, Ex. S, at 2). Ingenium argues, in effect, that the facts and issues have been present in the case during the discovery and motions stages so as to have allowed Edison a meaningful opportunity to conduct discovery into those facts and issues and thereby avoid the prejudice now claimed. That argument is inconsistent with Ingenium's position that it did not understand the need to plead the affirmative defenses until after Edison filed its summary-judgment motion.

In summary, Ingenium has failed to proffer a justifiable explanation for its delay in moving to amend, and this first factor weighs heavily against allowing further amendment.

As to the second factor, Ingenium's proposed affirmative defenses are relevant, as noted above. But Ingenium can present the facts underlying the defenses and can argue the inferences in responding to Edison's breach-of-contract claim. This factor weighs slightly in favor of allowing the amendment, but is not compelling.

The third factor is prejudice to the nonmovant. Edison argues that it "has no discovery on any of these defenses, it has taken no depositions related to these defenses, and it now has no opportunity to seek dispositive rulings on any [of] these defenses[.]" (Docket Entry No. 34, at 8). As noted above, the record shows that the parties have conducted some discovery into the facts relevant to Ingenium's proposed defenses, because those facts overlap with those relevant to Edison's breach-of-contract claim. But Edison had neither the need nor the opportunity to conduct discovery aimed squarely at the affirmative defenses, to the extent that these defenses raise any legal

issues distinct from those raised by the breach-of-contract claim and Ingenium's previously pleaded response to that claim. Nor did Edison have the need or the opportunity to move for summary judgment on those affirmative defenses. To that extent, Edison is prejudiced. Ingenium argues that it "has not asserted any new facts." (Docket Entry No. 27, ¶ 8). But to the extent that Edison previously conducted any necessary discovery because the legal and factual issues were already clearly in the case, Ingenium's ability to show good cause for its delay in moving to amend is further eroded.

The final factor is the availability of a continuance. Discovery and the filing of dispositive motions ended months ago. Docket call is nine days away, and the parties have already filed their joint pretrial order. A continuance at this late stage, after the work the parties have done, will be both disruptive and expensive. *See King Aerospace Comm. Corp. v. Al-Anwa Aviation, Inc.*, Civ. A. No. 3:08-CV-0999-L, 2010 WL 2573216, at *6 (N.D. Tex. June 24, 2010) (explaining that the third and fourth Rule 16(b)(4) factors "weigh against allowing leave to amend" because "[t]he request for amendment comes too close to the end of discovery and the trial date"); *see also, e.g.*, *United States v. Cordy*, 560 F.3d 808, 816 (8th Cir. 2009) (holding, in the criminal context, that "a continuance on the eve of trial can exact significant costs on the administration and case management of a federal court, members of the jury pool, witnesses, and other litigants affected by the postponement"); *Heller Fin., Inc. v. Pandhi*, 888 F.2d 1391 (table), 1989 WL 136091, at *3 (6th Cir. Nov. 9, 1989) (per curiam) ("Where a trial date has been set for some time and a continuance is requested shortly before trial, the court may deny the continuance." (citing *Mull v. Marathon Oil Co.*, 658 F.2d 386, 388 (5th Cir. 1981))); *Osunde v. Lewis*, 281 F.R.D. 250, 258 (D. Md. 2012) ("[T]o permit a continuance and the reopening of discovery to flesh out these issues on the eve of

trial would be highly disruptive."). This factor, like the first and third factors, weighs against allowing the proposed amendment.

On balance, Ingenium has failed to demonstrate good cause for amendment under Rule 16(b)(4). This court therefore need not consider whether the proposed amendment satisfies "the more liberal Rule 15 standard." *Cole*, 413 F. App'x at 688.

## III. Conclusion

Ingenium's motion for leave to file a second amended answer, (Docket Entry No. 28), is denied. Docket call will continue as scheduled on August 24, 2012 at 3:30 p.m. in Courtroom 11-B.

SIGNED on August 15, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge